FILED

2005 Aug-10  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

BOB KETCHUM, as personal representative for )
the estate of Marguerite Liedholt, deceased, )
The Liedholt Family Trust, )
            )
         Plaintiff, )
            )
v. ) CIVIL ACTION NO. 03-PWG-2793-S
            )
CONSECO LIFE INSURANCE COMPANY, )
            )
         Defendant. )

MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION
WITH RESPECT TO DEFENDANT'S RULE 56 MOTION AND
<u>ORDER RELATED TO NON-DISPOSITIVE MOTIONS</u>

Defendant Conseco Life Insurance Company removed this action from the Circuit Court of

Jefferson County, Alabama (CV 03-5683) to the Northern District of Alabama pursuant to the

provisions of 28 U.S.C. § 1441(a) and (b) asserting diversity jurisdiction.  (Doc. #1).  In the

underlying action the personal representative for the estate of Marguerite Liedholt sought damages

for breach of contract, misrepresentation and/or fraud, negligence, wantonness, bad faith refusal to

pay and other wrongful conduct.  (Doc. #1, attachment).[1] Defendant Conseco Life Insurance

Company has filed a motion for summary judgment (doc. #16) together with a memorandum in

support of the motion, including evidentiary exhibits.  (Doc. #27).  Conseco has filed a supplemental

motion for summary judgment on September 13, 2004.  (Doc. #26).  The personal representative of

the estate of Marguerite Liedholt has filed a response to the motions for summary judgment (doc.

#36) together with evidentiary submissions.  (Doc. #32).  Plaintiff has also filed a supplement to the

evidentiary submissions.  (Doc. #49).  Additional matters pending and resolved by this order are:

---

[1]     The plaintiff in the state court action was identified as Bob Ketchum as the personal representative of the estate of Marguerite Liedholt.  Upon the motion of Bob Ketchum and, over the objection of Conseco, Karen Liedholt Ketchum, the daughter of Marguerite Liedholt, was substituted as the named plaintiff.  (Doc. #11/10).

(1)     Conseco Life Insurance Company's motion to dismiss and/or for sanctions (doc. #17);

(2)     Conseco's motion for sanctions (doc. #28);

(3)     Conseco's motion to strike the affidavit of Dr. David Lange (doc. #39); and

(4)     Amended motion to strike the affidavit of David Lange (doc. #48).

The matter is before the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b); Rule 72 of the *Federal Rules of Civil Procedure*; LR 72.1; and the General Orders of Reference dated July 25, 1996, May 8, 1998, as amended July 27, 2000.

<u>JURISDICTION</u>

Federal courts are courts of limited jurisdiction.  See, e.g., *Kokkonen v. Guardian Life Insurance Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994).  Removal of a case from state to federal court is proper if the case could have been brought originally in federal court.  See 28 U.S.C. § 1441(a); *Tapscott v. M.S. Dealers Services Corp.,* 77 F.3d 1553, 1556 (11th Cir. 1996) ("Any civil case filed in state court maybe removed by the defendant to federal court if the case could have been brought originally in federal court.") (citations omitted).  The diversity statute confers jurisdiction on the federal courts in civil actions between citizens of different states in which the jurisdictional amount of greater than $75,000.00, exclusive of interest and costs, is met.  See 28 U.S.C. § 1332(a)(1).  It appears undisputed in this action that Conseco is a corporate entity existing and organized under the laws of the state of Indiana with its principle place of business in the state of Indiana.  Marguerite Liedholt, deceased, was domiciled in the state of Alabama at her death.  There is complete diversity among the parties in this action.

2

The removing party avers and the plaintiff does not contest that the amount in controversy exceeds $75,000.00. The complaint as filed in state court does not make a demand for damages in a discrete amount. "The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in someone shown that the amount stated in the complaint is not claimed 'in good faith.'" *Horton v. Liberty Mutual Insurance Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). While the complaint did not specifically allege a demand, the estate has sought *inter alia* the payment of life insurance proceeds of $75,000.00. The complaint when filed also asserted claims for wrongful conduct sounding in tort in addition to the contractual performance claim. The estate has not disavowed damages in excess of $75,000.00 nor raised a challenge to the propriety of the removal. The defendant Conseco has satisfied the amount in controversy component of diversity jurisdiction. This action is properly before the United States District Court for the Northern District of Alabama.

<u>SUMMARY JUDGMENT</u>

Summary judgment "shall be rendered forthwith it the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court construes the facts and all reasonable inferences therefrom in a light most favorable to the non-moving party, in this case the personal representative of the estate of Marguerite Liedholt. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and which that part will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  Moreover, at the summary judgment state the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether is a genuine issue for trial.  *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

Also relevant to the pending Rule 56 motion is the instruction to District Courts from the Eleventh Circuit Court of Appeals with regard to motions for summary judgment which are unopposed.  See *Cable/Home Communications Corporation v. Network Productions, Inc.*, 902 F.2d 829, 839 n.20 (11th Cir. 1990) (discussing district court's grant of unopposed motion for summary judgment by default).  In general a district court may not enter summary judgment predicated merely upon the fact that the motion was unopposed but must consider the merits of the motion.  *United States v. One Piece of Real Property Located at 5800 S.W. 74th Ave., Miami, Fla.,* 363 F.3d 1099 (11th Cir. 2004).

<u>OPERATIVE FACTS</u>[2/]

It is not disputed that in August of 1993 seventy-eight year old Marguerite Liedholt "applied" to Conseco's predecessor for life insurance coverage through an "independent contractor," Jennifer Bynum.[3/]  Ms. Liedholt had sought, *inter alia*, to minimize the estate taxes by availing herself of the gift tax exemptions.  This effort motivated at least in part the purchase of life insurance payable to the Liedholt family trust upon her death.  Ms. Liedholt had experienced significant health problems in the years proceeding her purchase of the life insurance coverage.

---

[2/]     While the underlying facts appear to be undisputed all inferences are necessarily drawn in favor of the non-moving party, the estate of Marguerite Liedholt.

[3/]     The term "independent contractor" originates with Conseco's papers.  The complaint alleges that Conseco was "... doing business by <u>agent</u> in Alabama...."  For the purposes of this order the status of Bynum is not relevant. Conseco's term is used not because the relationship is as the designation asserts but because it is not important for the purpose at hand.

It is undisputed that at the time Ms. Liedholt sought the insurance coverage that both she and the "independent contractor" who sold her the policy understood that she would obtain a $75,000.00 death benefit payable at her death in exchange for the payment of premiums in the amount of $20,000.00 for a period of three years.[4] It is also undisputed that the "independent contractor" Bynum and Ms. Liedholt concluded that the insured would obtain $75,000.00 in benefits in exchange for a total of $60,000.00 in premiums based in part upon a flawed computer software program provided by Conseco's predecessor to such "independent contractors" for the purpose of peddling that company's insurance products. In addition, before the policy was issued Ms. Bynum also talked to representatives of Conseco's predecessor concerning the aggregate premium and benefits.[5] She clearly understood that the policy would provide $75,000.00 death benefit coverage in exchange for the payment of $60,000.00 payable at a rate of $20,000 annually for a period of three years.

Mr. Bynum delivered the insurance policy to Ms. Liedholt on September 9, 1993. Ms. Liedholt paid a premium of $20,000.00. Ms. Liedholt paid additional premiums of $20,000.00 yearly in the calendar years 1994 and 1995. It is undisputed that on July 9, 1996 Ms. Liedholt as

---

[4]     Conseco contends that we are not to know such things. The argument, however, can relate only to a challenge to a resort to parol evidence in interpreting the intent of the parties with respect to the insurance contract itself. The complaint as currently before the court also includes allegations of fraud, bad faith and negligence. Ms. Liedholt's understanding and that of Ms. Bynum is relevant to such claims.

[5]     Q:      Did you have a specific conversation with Lamar [Conseco's predecessor], someone Lamar that dealt with the premium payments of $20,000.00 a year?

        A:      Well, you know, I talked to several different people at Lamar I am sure, but in my file I had notes talking to Jane, somebody named Jane Talbert.

        Q:      Right.

        A:      And she is the one who initially – I mean finally finished getting the policy issued. And it was set for $20,000.00 a year for three years, $60,000.00 for a benefit of $75,000.00 death benefit.

        (Plaintiff's submission, doc. #36, attachment #1, Bynum deposition at p.32).

trustee for the Liedholt family trust received a letter from Lamar Life Insurance Company which stated:

> Our records reflect that your policy's planned premium of $20,000.00 will exceed the maximum tax guideline limit.  A partial payment of $12,602.25 maybe submitted to reach the maximum limit for the amount of coverage you currently have in force.  We have suspended future billings on your policy until August 24, 1997.  After that date you <u>may</u> resume premium payments for up to $18,126.00 per year. (Emphasis added).

(Doc. #27, Conseco's evidentiary submissions, exhibit 7).

As of July 19, 1996 Ms. Leidholt had paid $60,000.00 in premiums and received a letter from her insurance company stating that they would "suspend future billings ... until August 24, 1997" at which time she "may" begin to pay premiums.[6/]

In 1997, apparently after Ms. Liedholt received a demand for additional premiums, Walt Luehlfing, who had previously been employed as an underwriter and in August 1997 was employed by Ms. Bynum, wrote to Conseco to explain that the agent, the underwriter and the policy owner had all understood that no additional premiums were due.  Mr. Luehlfing reported that after receiving

---

[6/]     Conseco asserts that the July 1996 letter galvanized Ms. Liedholt into action indicating that she was aware of the breach of contract.  The evidentiary submissions, however, do not support that conclusion.  Conseco refers the court to p. 81 of the Ketchum deposition in which Ketchum notes that Liedholt told her "I received 'a letter'."  Nothing in the cited page indicates it was the July 1996 letter.  Conseco also asserts that the Bynum deposition supports the claim that Ms. Liedholt knew that Conseco was demanding additional premiums in 1996.  The Bynum deposition at the cited page merely noted that there was a July 1, 1996 letter.  The question then put to Ms. Bynum was whether that was the "first notice" that the insurance company was asking for or expecting additional premium payments.  Her answer was yes.  That answer does not mean that Ms. Liedholt understood or even that Bynum understood that in 1996 that Conseco was demanding additional premiums in the future.  The question was also whether "if she [Ms. Liedholt] would have said in July of 1996 that she thought something was wrong and she wanted to cash, could she have terminated that policy and received a check for cash value."  The answer was also yes.  The answer does not establish that Liedholt did or did not "understand" that she was to pay additional premiums, only that if she had understood it she could have acted.  Nothing in the cited pages remotely suggests that Ms. Leidholt understood that she was to pay additional premiums in July of 1996.  The second answer merely established that had she noticed a change Ms. Leidholt might have cashed in the policy.  There may be references in the record that support the claims that Ms. Liedholt knew that Conseco did not intend to adhere to the contract as she understood it but Conseco has not identified the relevant portions.  Moreover, Conseco is not entitled to an inference that Leidholt knew of the premium demands in 1996 when there is clearly a reasonable inference to the contrary.

the demand Ms. Liedholt "... [felt] that the original 'agreement' was 'breached' by the actions." (Doc. #27, exhibit 9).[7/]

Conseco did not respond to Luehlfing's letter until October of 1997 and then only to say that it acknowledged that the 1993 representations upon which Bynum and Leidholt had concluded that no additional premiums would be required were wrong.  The company asserted, however, that the representations were "not a part of the contract" and repeated the demand for additional premiums. (Exh. 27, #10).  Conseco unilaterally terminated the policy on February 24, 1998.

THE BREACH OF CONTRACT CLAIM

<u>The statute of limitations</u>

Under Alabama law an insurance contract is governed by the same general rules as other contracts.  *Auto-owners Insurance Company v. Culpepper*, 426 So.2d 435 (Ala. Civ. App. 1983); *Southern Guaranty Insurance Company v. Rhodes*, 46 Ala. App. 454, 243 So.2d 717 (1971).  "The statute of limitations on a contract action runs from the time the breach occurs rather from the time actual damage is sustained."  *AC, Inc. v. Baker*, 422 So.2d 331 (Ala. 1993).  Conseco argues that it breached the contract with Ms. Liedholt, if at all, on September 9, 1993, July 1996, or August 1997. The estate argues that no breach occurred until the policy was terminated in February 1998 or at the death of Liedholt in 2002.

A breach of contract is a "violation of a contractual obligation, either by failing to perform ones own promise or by interfering with another party's performance."  *Blacks Law Dictionary*, 7th

---

[7/]     Oddly, Conseco asserts that Luehlfing's hearsay reference to a "breach" proves that Liedholt knew that Conseco had breached the contract in August of 1997.  Conseco does not explain, without regard to the hearsay nature of Luehlfing's comments, how a lay person's use of the term "breach" establishes that a breach as a matter of law has occurred.  Moreover, in 1997 Conseco had made, under Ms. Liedholt's construction of the contract, an unwarranted demand for additional premiums.  The relationship between the parties, in August of 1997 was unchanged.  Conseco was obligated to pay $75,000.00 at the death of Ms. Liedholt.  She did not owe additional premiums under her view of the contract.  Mr. Liedholt may have assumed that before an actual breach, Conseco would have recognized its error especially after receiving the letter from Luehlfing.

Edition, West Publishing 1999.  The contract between Marguerite Liedholt and Conseco called for Ms. Liedholt to pay premiums which she did, in exchange for Conseco's promise to pay $75,000.00 at her death which it did not.  Contrary to Conseco's claim, the policy delivered to Ms. Liedholt in September 1993 could not have identified the breach because Ms. Liedholt could not have known that at some future time Conseco would refuse to perform its promise as she understood that promise.[8/]  Conseco did not breach the agreement in 1996 by telling Ms. Liedholt that she would not pay premiums in 1996.  The contract was not breached when the company informed her that she "may" pay additional premiums in 1997.  Conseco did not breach the contract by demanding that Ms. Liedholt pay additional premiums in August of 1997.  Conseco continued, under its own view of the contract, to be obligated to pay $75,000.00 at Ms. Liedholt's death until the contract was terminated. The company breached the agreement when, under a reasonable construction of the terms of the policy and Ms. Liedholt's understanding of those terms, Conseco terminated the contract of insurance without justification.[9/]  There is no dispute that an action for wrongful termination under Alabama law is a matter of contract law and is not a tort claim.  Under Alabama law the wrongful cancellation of an insurance policy does not give rise to a tort action.  The remedy for wrongful cancellation of a policy is found in contract.  See *ALFA Mutual Insurance v. Northington*, 604 So.2d 758 (Ala. 1992); *Rabon v. Allstate Insurance Co.,* 589 So.2d 710 (Ala. 1991); *Baker v. State Farm General Insurance Co.*, 585 So.2d 804 (Ala. 1991); *Watkins v. Life Insurance Company of Georgia*,

---

[8/]     Conseco argues that her understanding of the contract was wrong.  That may or may not be but the argument assumes the absence of an ambiguity in the contract itself which is an inference or conclusion to which Conseco is not entitled.  To assume that Conseco's understanding of the contract is "right" inverts the analytical process required to identify the breach.  Conseco did not "breach" the agreement by not understanding the terms.

[9/]     Conseco argues that no witness could point to a "term" or the agreement which had been breached.  In fact, however, the witnesses agreed that there was no term of the contract to support the demand for additional premiums and to terminate the coverage on grounds that such unwarranted premiums had not been paid was a breach.

456 So.2d 259 (Ala. 1984).  The contractual relationship between Ms. Liedholt and Conseco was

unaltered until the policy was terminated.  That termination was within the six year period in which

an action could be brought when the lawsuit was filed on September 8, 2003.

The ambiguity of the contract

Whether an agreement is ambiguous is a question of law to be determined by the court.

*Austin v. Cox*, 523 So.2d 376 (Ala. 1988).  An agreement is ambiguous if it is susceptible to more

than one meaning.  *Bain v. Gartrell*, 666 So.2d 523 (Ala. Civ. App. 1995).  However, an agreement

is not rendered ambiguous simply because the parties assign different meanings to it.  *Wayne J.*

*Griffin Electric Company, Inc. v. Dunn Construction Co.,* 622 So.2d 314 (Ala. 1993).  Parol

evidence regarding the terms of an agreement is admissible only where an ambiguity exits.  *FW*

*Woolworth Company v. Grimmer*, 601 So.2d 1043 (Ala. Civ. App. 1992).

The test to be applied by a court in determining whether there is ambiguity is not what the

insurer intended its words to mean, but what a reasonably prudent person applying for insurance

would have understood them to mean.  *Lee R. Russ and Thomas F. Segalla, Couch on Insurance* §

21:14, pp. 21-23 (3d ed. 1977) quoted in *Alabama Farm Bureau Mutual Casualty Insurance*

*Company v. Goodman*, 279 Ala. 538, 541, 188 So.2d 270 (1966).  In assessing an ambiguity a court

should apply the common interpretation of the language alleged to be ambiguous.  This means that

the terms of an insurance policy should be given a rational and practical construction.  *Green v.*

*Merrill*, 193 Ala. 628, 308 So.2d 702 (1975).  Policy language cannot be considered in isolation but

must be assessed in light of the policy as a whole.  *Turner v. United States Fidelity and Guaranty*

*Co.,* 440 So.2d 1026 (Ala. 1983), see also *State Farm Fire and Casualty Company v. Slade*, 747

So.2d 293, 308-09 (Ala. 1993).[10/]

This is not a case in which a policy is parsed to divine the meaning of a phrase which in turn

implicates an issue related to coverage or identifies the criteria to be satisfied before that coverage

is assured.  The only question here is whether this policy using terms commonly understood,

unambiguously tells the reader what the parties' agreement was as to how much the policy would

cost.  Conseco argued that this unambiguous information is found in the policy schedule page.

Conseco contends that this page unambiguously states that the parties agreed that Ms. Liedholt

would make a premium payment of $20,000.00 every year through August 24, 2010.  The policy

specifications page referred to by Conseco provides:

> August 25, 1993 – Issue Date
> August 24, 1993 – Effective Date
> August 24, 2010 – Maturity Date
>
> \* \* \* \*
>
> Initial Premium – $.00 Planned periodic premium – $20,000.00
> Planned Payment Interval – Annual
> Extension period – 3 years from issue date
>
> \* \* \* \*
>
> Important notice:        It is possible that coverage will expire prior to the maturity
>                          date of the contract if no premiums are paid after the first or

---

[10/]    Conseco has moved to strike the affidavit of plaintiff's expert David R. Lang, Ph.D.   (Docs #49 and #48).
Conseco relies in part upon Magistrate Judge Ott's conclusion in *Brooks v. J.C. Penney Life Insurance
Company*, 231 F. Supp. 2d 1136 (N.D. Ala. 2002) that an expert affidavit which "appears to consist primarily
of legal conclusions, ... [was not helpful in analyzing the issue] of the meaning of a term "medical or surgical
treatment." Dr. Lange's affidavit, unlike the affidavit in *Brooke*, does not "interpret" a particular word but,
rather, identified the language of the policy from which an ambiguity is said arises.  Conseco also challenges
that introduction of the affidavit on grounds that Lange is not an expert.  Whether viewed as expert testimony
or not, the Lange affidavit at a minimum illuminates that text of the contract which is said to give rise to an
ambiguity.  The court may consider the affidavit without accepting the legal conclusion that the contract is in
fact ambiguous.  Accordingly, the defendant's motion to strike the affidavit contained in documents #48 and
#49 is DENIED.  The court, however, does not draw conclusions or inferences from Dr. Lange's assertion that
the contract is ambiguous as a matter of law.

if subsequent premiums paid and interest credited are not sufficient to continue coverage to the maturity date.

(Policy, p.3, Exhibit 2 to doc. #27).

Conseco also finds clarity in that portion of the contract identified as:

### 4.   Grace Period

Starting on the monthly date when the cash surrender value is less than the monthly deduction for the policy month to follow, a grace period will be given for the payment of enough premium to cover the monthly deduction.  During the extension period (shown on the schedule), so long as the sums of premiums paid less an partial surrender and less any indebtedness, equals or exceeds the sum of the minimum premiums accrued, the grace period would be the longer of sixty-one days or the end of the extension period.  Otherwise, and after the extension period, the grace period would be sixty-one days.

\* \* \*

If the required premium is not paid within the grace period, the policy will terminate.  If the insured dies during the grace period, the death benefit will be paid but reduced by the premium needed to cover the monthly deductions.

We will mail, and any assignee of record, a notice of the amount of premium that will be sufficient to continue the policy enforce for at least thirty days before the end of the grace period.

(Doc. #27, Exhibit, p.6).

Conseco acknowledges that the only reference to premium payments in the policy schedule is the statement that monthly premiums would be $1,596.08, while simultaneously acknowledging that the monthly premium on the specification page was irrelevant to Ms. Liedholt's contract because she would pay a "planned annual premium of $20,000.00."  (Doc. #27, p.9).  Conseco argues that the term "annual" as used on the policy schedule page clearly means that $20,000.00 premiums are to be paid every year for the life of the contract.  The text of the contract itself, however, does not support the assertion.  Conseco recognizes that Ms. Liedholt agreed to make "annual" payments.

11

Conseco maintains that the policy language is clear that the number of annual payments is equal to the number of years of the life of the policy. The policy does not say that any where in the cited portions. Annual in the context of the policy specification page simply means that the payments would not be made monthly or by-monthly or weekly or by-weekly but that when the premium payment was due it would be paid in the amount of $20,000.00 once a year. Nothing in the language of the policy nor the policy specification page indicates that the parties agreed that the premiums would be paid in the amount of $20,000.00 through the year 2010 in order to obtain $75,000.00 in death benefit coverage. Indeed the language immediately after the reference to "annual" as opposed to monthly premium payments language refers to an undefined extension period of three years from the issue date.

Conseco's claim that the "important notice" makes clear that the insured has agreed that she would make payments for the life of the policy is simply wrong. The notice tells the insured that the contract will expire prior to the maturity date of the contract if the premiums are not paid or covered by growth. It does not in any fashion state the number of annual premium payments to be made. The language does not indicate that there is any possibility that three payments of $60,000.00 would be insufficient to provide coverage for the life of the policy. Neither does the grace period reference support the conclusion that Ms. Liedholt agreed to pay $20,000 every year for the life of the policy. The grace period merely indicates that when the annual payment is due that there would be a grace period in the event the payment for that year was tendered late. The language of the grace period applies with equal force to either interpretation of the premium payment schedule.

Conseco in its effort to demonstrate the correctness of its own contractual interpretation simply ignores the fact that the policy language itself is inherently ambiguous with respect to the total premium to be paid. The insurance contract is ambiguous as a matter of law. That does not

mean Conseco is wrong about its understanding, only that additional evidence beyond the four corners of the policy is necessary to resolve the dispute.

There is a material issue of fact to be determined by the fact finder when the actual terms of the contract are given a rational and practical construction.  Where factual issues arise the resolution of the ambiguity of the contract becomes a task for the jury.  *McDonald v. U. S. Die Casting and Development Company*, 585 So.2d 853 (Ala. 1991).  It is wholly unnecessary to go beyond the four corners of the agreement to conclude that the insurance contact at issue unambiguously demonstrates the parties have agreed to its cost.  Conseco's motion for summary judgment on the breach of contract claim is due to be DENIED.

<u>THE TORT CLAIMS</u>

As noted above, a Rule 56 motion may not be granted solely upon the grounds that it is unopposed.  Conseco argues that the discrete tort claims are barred by application of § 6-5-462, *Code of Alabama* (1975) which states that "... all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, expressed or implied, and all persons upon which an action has been filed ... survive in favor of and against personal representatives ...."  Alabama law appears clear that unfiled tort claims of a deceased do not survive the death.  Conseco cites *Gillian v. Federated Guaranty Life Insurance Co.*, 447 So.2d 668 (Ala. 1984) in which the court observed that tort actions will not survive the death of the injured party except in cases in which the filing of the action predated the death.  The estate concedes that the bad faith tort claims are due to be dismissed although on different grounds.  The estate contends that a trier of fact may address a bad faith claim only upon the plaintiff's demonstration of entitlement is a judgment as a matter of law on the contract claim.  (Doc. #36).  The estate maintains that "dismissal" is appropriate but only because the estate is not entitled to a directed verdict on the question of whether payment was due.

There appears to be little dispute that plaintiff's fraud claims which were not filed prior to the death of Marguerite Liedholt have been extinguished. While not conceding that Conseco has correctly stated the law with respect to the bad faith claim the estate does not challenge Conseco's assertion that the fraud claims do not survive. As a matter of law, Conseco is entitled to summary judgment with respect to all tort claims including the bad faith claim. Conseco is entitled to summary judgment not on grounds that the plaintiff has failed to establish her entitlement to a directed verdict but on the grounds stated in Conseco's Rule 56 pleadings. As a matter of law, the bad faith claim together with the other tort claims were extinguished and this action is barred by application of Alabama law. Conseco also correctly observes that the remaining tort claims arose in February of 1998 and are barred by the application of the two year statute of limitations.

Conseco is entitled to summary disposition of all claims but for the breach of contract claim and is entitled to that disposition because (1) the action did not survive the death of Marguerite Liedholt and (2) the statute of limitations bars the tort claims which arose in February of 1998.


Defendant's motion to dismiss for failure to comply
with the court's order or for sanctions (doc. #17)

After review of the requirements of Rule 37(d) and the supporting affidavit filed pursuant to this court's order of April 24, 2004 (doc. #21) it is ORDERED that the estate is liable to Conseco in the amount of $2,000.00 in that there is no basis for a finding of substantial justification for the plaintiff's failure to tender garden variety discovery responses in an appropriate and timely fashion. See *Devaney v. Continental American Insurance Company*, 989 F.2d 1154 (11th Cir. 1993). The $2,000.00 is payable at the conclusion or final disposition of the action.

14

Conseco's motions to strike the affidavit of Dr. David Lange (doc. #39) and the amended motion to strike the affidavit of Lange (doc. #48) are DENIED.[11]

Conseco's motion to impose sanctions related
to the deposition of Walt Luehlfing (doc. #28)

In light of plaintiff's response, doc. #31 is due to be DENIED.

Plaintiff's motion to substitute evidentiary submissions (doc. #49) is GRANTED.

The parties are DIRECTED to Rule 72(b), *Federal Rules of Civil Procedure*.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

---

[11]     The court, however, does not consider the Lange affidavit as "expert testimony."